ALEXANDER GUMM, By and Through His Guardian ad
Litem, ALLEN GUMM; ALLEN GUMM; and AN-
TOINETTE GUMM, Petitioners, *v.* NEVADA DEPART-
MENT OF EDUCATION, Respondent, and DOUGLAS
COUNTY SCHOOL DISTRICT, Real Party in Interest.

No. 44491

June 23, 2005                                  113 P.3d 853

*Nevada Disability Advocacy and Law Center* and *Elizabeth A.
Cannon-Lynch,* Sparks, for Petitioners.

*Brian Sandoval,* Attorney General, and *James E. Irvin,* Deputy
Attorney General, Carson City, for Respondent.

*Crowell Susich Owen & Tackes* and *J. Thomas Susich,* Carson
City; *Walther Key Maupin Oats Cox & LeGoy* and *C. Robert Cox*
and *Michael A. Nivinskus,* Reno, for Real Party in Interest.

Before ROSE, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

The Individuals with Disabilities Education Act[1] (IDEA) is designed "to ensure that all children with disabilities have available to them a free appropriate public education" in light of their special needs.[2] In this, the IDEA aims to help schools prepare students with disabilities for independent living, to ensure that the rights of such children and their parents are protected, and to assist continuing efforts to provide and implement the most effective educational programs possible.[3] To accomplish those purposes, the IDEA and its corresponding regulations set forth certain procedural measures, which are intended to safeguard the substantive rights afforded to children and their parents under the act. This petition for a writ of mandamus involves a state educational agency's alleged refusal to comply with one of those procedures. We take this opportunity to clarify and distinguish two mechanisms for obtaining review of IDEA issues.

### FACTS

In November 2001, petitioners Alexander Gumm, an autistic child, and Allen and Antoinette Gumm, Alexander's parents, requested a due process hearing under the IDEA. The Gumms alleged that real party in interest Douglas County School District had failed to provide Alexander with a free appropriate public education under the act. At the hearing's conclusion, the hearing officer found that the school district had failed to provide Alexander with appropriate education. Accordingly, the hearing officer directed the school district to satisfy specified compensatory education require-

---

[1]20 U.S.C. §§ 1400–1487 (2000).

[2]*Id.* § 1400(d)(1)(A).

[3]*Id.* § 1400(d).

ments in 2002-2003 and to reimburse petitioners for "all out-of-pocket expenses" related to Alexander's placement in a separate childhood autism program in 2001-2002. Although the hearing officer expressly directed the school district to pay the Gumms "mileage for one round trip for each day [Alexander]" attended the program, the hearing officer did not otherwise define "out-of-pocket expenses."

The school district administratively appealed the hearing officer's decision to a state review officer. The review officer, however, affirmed each of the findings challenged by the school district, all of which involved the appropriateness of the available education. Thus, the review officer did not address any question regarding the meaning of "out-of-pocket expenses," and the review officer's decision merely reiterated that the school district must reimburse petitioners' out-of-pocket expenses. Neither party challenged the review officer's decision in the district court.

In complying with the review officer's decision, the school district reimbursed the Gumms $64,770.72, of which $27,961.92 apparently constituted the amount required to provide Alexander with transportation to the childhood autism program for 230 days.[4] The Gumms, however, believed that they were owed an additional sum under the decision, to fully account for Antoinette's salary and benefits that she forfeited when she took employment leave in 2001 in order to provide Alexander with transportation to and from the program. Consequently, the Gumms submitted a complaint to respondent Nevada Department of Education (NDOE), requesting that NDOE immediately enforce the review officer's decision by directing the school district to pay them an additional $26,515.27 as additional reimbursement for Antoinette's forfeited salary and benefits.

NDOE conducted an investigation into the Gumms' complaint and found that the review officer's decision neither specified a reimbursement amount nor further clarified "out-of-pocket expenses." Noting that evidence concerning the Gumms' requested relief, submitted during the due process hearing but addressed by neither the hearing officer nor the review officer, did not determine the matter, NDOE then applied its own legal analysis to the reimbursement issue. NDOE determined that the school district was not required by law to reimburse an additional amount equal to Antoinette's forfeited salary and benefits and had paid all the monies owed under the review officer's decision. Therefore, NDOE concluded, nothing remained to be enforced.

---

[4]The reimbursement letter also noted that supplementary (nonsalary-related) amounts would be reimbursed upon the Gumms' submittal of certain itemized billing statements.

Thereafter, the Gumms filed the instant writ petition, asserting that they had no other means to challenge the school district's refusal to pay additional monies owed under the review officer's decision other than to submit a complaint to NDOE. The Gumms urge this court to issue a writ of mandamus directing NDOE to "vacate" its refusal to enforce the decision and to order the school district to pay additional sums for reimbursement. As directed, both the school district and NDOE timely filed answers to the writ petition. The Gumms have submitted a reply.[5]

## DISCUSSION

A writ of mandamus is available to compel the performance of an act that the law requires as a duty or to control an arbitrary or capricious exercise of discretion.[6] This extraordinary writ will issue only when the right to the relief requested is clear and the petitioners have no plain, speedy and adequate remedy in the ordinary course of law.[7] In this instance, although we ultimately conclude that writ relief is not warranted, we nevertheless exercise our discretion to review this petition because it appears that the Gumms may not have an adequate legal remedy.

### IDEA procedural overview

Under the IDEA, state and local agencies that accept federal IDEA funding must ensure that "children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education."[8] Thus, the IDEA delineates the rights of parents and children to participate in an impartial due process hearing regarding any complaint that pertains to the "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."[9] The parties to a due process hearing are afforded the rights (1) to be advised by counsel, (2) to present evidence and compel witnesses, (3) to obtain a record of the hearing, and (4) to

---

[5]We grant the Gumms' motion for leave to file a reply to the answers. The clerk of this court shall file the reply, provisionally received on April 4, 2005.

[6]NRS 34.160; see also Smith v. District Court, 107 Nev. 674, 818 P.2d 849 (1991); Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981).

[7]Hardin v. Guthrie, 26 Nev. 246, 66 P. 744 (1901); NRS 34.170.

[8]20 U.S.C. § 1415(a).

[9]Id. § 1415(b)(6); see also id. § 1415(f); NAC 388.300(7).

receive written findings of fact and a decision.[10] Any party aggrieved by the hearing's outcome may administratively appeal to a state review officer, and any party aggrieved by the review officer's decision may appeal that decision by initiating a civil action in the district court within thirty days of the decision's issuance.[11]

Related to, yet separate from the due process hearing, NDOE must investigate and resolve any complaint alleging that a public agency has violated the IDEA or regulations promulgated pursuant to the IDEA for which a due process hearing is not requested or is not available.[12] This complaint review procedure (CRP) is thus an alternative method of resolving an IDEA complaint, identified not in the IDEA but rather in federal and state regulations. It is intended to constitute an informal and less expensive means of resolving complaints alleging due process violations, as well as complaints involving other IDEA concerns.[13] Unlike due process hearings, the CRP is performed by NDOE, rather than by an impartial administrative officer. Once a complaint is received, NDOE has sixty days in which to investigate the complaining party's allegations and render a decision; the local school district must comply with any NDOE order directing it to remediate a violation.[14] Issues that are addressed in a due process hearing decision are final, however, and may not be further reviewed during a CRP.[15] But a "complaint alleging a public agency's failure to implement a due process decision must be resolved by [NDOE]" through the CRP.[16] Neither federal nor state regulations contain any provision regarding appeals from CRP decisions.[17]

In this instance, the review officer's due process decision became final when no party thereafter initiated a district court action.

---

[10]*Id.* § 1415(h); NAC 388.310; *see also* 34 C.F.R. § 300.509 (2004).

[11]20 U.S.C. § 1415(g), (i)(2); NAC 388.315.

[12]34 C.F.R. §§ 300.660–.662; NAC 388.318.

[13]*Assistance to States for the Education of Children with Disabilities and the Early Intervention Program for Infants and Toddlers with Disabilities,* 64 Fed. Reg. 12,406, 12,646 (March 12, 1999) [hereinafter *Assistance to States*]; *Porter v. Board of Trustees of Manhattan Beach,* 307 F.3d 1064, 1072-73 (9th Cir. 2002); *see also Lucht v. Molalla River School Dist.,* 225 F.3d 1023 (9th Cir. 2000) (detailing available IDEA procedures under federal and Oregon law).

[14]34 C.F.R. § 300.661; NAC 388.318.

[15]34 C.F.R. § 300.661(c)(2).

[16]*Id.* § 300.661(c)(3).

[17]*Id.*; NAC 388.318. Before being amended in 1999, the federal regulations permitted a party to appeal a CRP decision to the U.S. Department of Education. *See Assistance to States,* 64 Fed. Reg. at 12,646.

Then, once the Gumms discovered that they would not receive the amount they believed was due, they invoked the CRP's enforcement mechanism by filing a complaint with NDOE alleging that the school district had failed to fully implement the due process decision. NDOE timely resolved the complaint.

### Propriety of writ relief

Initially, we note that the Gumms' right to the relief they requested—enforcement of the review officer's decision by directing the school district to pay an additional sum certain—is not at all as clear as they contend; the decision merely provides for "out-of-pocket expenses" without defining the phrase, and nothing else in the record demonstrates that the review officer, or even the hearing officer, meant that phrase to include Antoinette's forfeited income. As a result, the administrative decisions' "out-of-pocket expenses" reimbursement requirement is vague, and the parties should have sought clarification.

The school district maintains that the Gumms could have directly filed an IDEA complaint in the federal or state district court seeking to enforce the administrative decision, instead of instigating the CRP.[18] The Gumms disagree, asserting that with the promulgation of the 1999 amendments to the federal regulations providing a means of administrative enforcement, enforcement actions in the courts are no longer available. In this instance, however, even if the Gumms are correct,[19] it appears that they nevertheless might have been able to institute a district court action seeking an interpretation of the IDEA decision. Even so, whether the Gumms could have directly instigated a district court action instead of filing a CRP complaint is immaterial to our resolution of this petition; under the regulations, the Gumms properly invoked the CRP as a means of enforcing the administrative decision. Accordingly, the question here is whether NDOE failed to carry out its CRP duties under the law.

NDOE asserts that it had no authority within the CRP to direct the review officer to clarify the administrative decision because re-

---

[18]*See Porter,* 307 F.3d at 1069-70, 1069 n.7 (holding that parents were allowed to bring an action in the federal district court to enforce a due process decision without first exhausting the California CRP but not reaching the question of whether such actions were appropriate under either the IDEA or federal civil rights statutes); 20 U.S.C. § 1415(i)(2).

[19]We note that, while not addressing the CRP or its significance within the IDEA's enforcement scheme, the First Circuit Court of Appeals, at least, held that a 2002 due process decision enforcement action was viable in the federal district court under the IDEA without further resort to administrative remedies. *See Nieves-Marquez v. Puerto Rico,* 353 F.3d 108 (1st Cir. 2003).

manding the matter for clarification would improperly interfere with the decision's finality. NDOE cites two Third Circuit Court of Appeals opinions for support. In *Muth v. Central Bucks School District,*[20] the court recognized that, within the IDEA predecessor's administrative appeal context, "a remand following an [administrative] 'impartial review' is fundamentally inconsistent with the statutory scheme." The court also noted that the regulations contained stringent timetables meant to ensure a final administrative decision within seventy-five days of receipt of the due process hearing request and within thirty days of a request for review of a hearing officer's decision.[21] After the review officer renders a decision, an aggrieved party might then institute a district court action. However, in *Carlisle Area School v. Scott P.,*[22] the court also recognized that, unlike an administrative reviewer, the district court is permitted to remand an administrative decision for clarification. The court noted that *Muth* "rested on the rationale that [administrative] remands to the administrative hearing officer obstructed the party's access to judicial review" and concluded that barring a court from remanding an IDEA matter to an administrative officer would impair the court's ability to review the decision fairly and undermine the same policies asserted in *Muth.*[23]

The above cases do not directly support NDOE's contentions, however, since NDOE was not providing appellate review of the administrative decision. Instead, as mentioned, the matter was before NDOE through the CRP. Nevertheless, it appears that NDOE properly independently determined which expenses the Gumms were entitled to receive. Under 34 C.F.R. § 300.661(c)(3)'s enforcement mechanism, NDOE must resolve a complaint alleging that the school district failed to implement a due process decision. And in so doing, NDOE must "[r]eview all relevant information and make an independent determination as to whether the public agency is violating a requirement of [the IDEA] or of this part."[24]

The Gumms' complaint was specifically made under the federal enforcement regulation and expressly alleged that the school district had failed to implement the due process decision clearly defining "out-of-pocket expenses." Since the due process decision does not in fact address what constituted those expenses, however, in order to resolve the Gumms' complaint, NDOE was required,

---

[20]839 F.2d 113, 124 (3d Cir. 1988), *reversed and remanded on other grounds sub nom. Dellmuth v. Muth,* 491 U.S. 223 (1989).

[21]*Id.* at 125.

[22]62 F.3d 520, 526 (3d Cir. 1995).

[23]*Id.*

[24]34 C.F.R. § 300.661(a)(3) (2004).

and had the power, to make its own legal determination of the reimbursement question.[25] Accordingly, NDOE acted as it was required to act under the regulations, and extraordinary relief is not warranted in this case.

## CONCLUSION

Under the IDEA, two distinct procedures exist for resolving complaints: the due process hearing and the CRP. Here, because NDOE properly observed its duties under the CRP regulations when it determined that the school district had fully complied with the administrative due process decision, mandamus will not lie to compel NDOE to direct the school district to remit an additional sum under the decision. Accordingly, we deny the Gumms' petition for a writ of mandamus.

ROSE and GIBBONS, JJ., concur.

---

[25]*See id.* § 300.661(c); *id.* § 300.660(b) ("In resolving a complaint in which it has found a failure to provide appropriate services, [NDOE], pursuant to its general supervisory authority . . . must address: (1) How to remediate the denial of those services, including, as appropriate, the awarding of monetary reimbursement . . . .").